Filed April 12, 1892.

---

No. 430.

## BOWSER v. SPIESSHOFER.

PROMISSORY NOTE.—*Action upon by Endorsee.—Defence Based upon Fraudulent Representations.—Instructions to Jury.—Illegal Transaction.*—The defendant, in an action on a promissory note executed by him, payable at a bank in this State, and endorsed by the payee before maturity to the plaintiff, filed an answer alleging that he gave the note in payment of a certain number of bushels of " Bohemian oats," purchased by him, and that he was induced to execute the note by the false and fraudulent representations of the payee, that he was a member of a certain seed company, which was solvent, and which would take from the defendant double the number of bushels of oats sold to him, at ten dollars per bushel.    At the time he executed the note, the defendant received a bond, which contained the following provision : " It is agreed and understood by and between the party named in this bond and said company, that the transaction covered by this obligation is of a speculative character, and is not based upon the real value of the grain."

*Held,* that the court having instructed the jury that if fraud was shown in the inception of the note, the burden would be upon the plaintiff to

show himself an innocent holder in all respects, and having treated the answer as stating a good defence, based upon fraudulent representations, an instruction was proper that in determining whether the defendant was induced to sign the note by the fraudulent representations of the payee, the jury might take into consideration the wording and character of the bond delivered to the defendant, and if the main inducement to the signing of the note was the defendant's belief that he would reap a benefit by becoming a party to a transaction of the dishonest character disclosed by the bond, the finding must be for the plaintiff.

*Held*, also, that an instruction was proper, that if the main inducement to the signing of the note by the defendant was an anticipated benefit by becoming a party to the dishonest transaction set forth in the bond, and if the plaintiff was the owner of the note, the jury need not inquire as to whether he purchased it before or after it became due, as he was entitled to recover if he bought and paid for it at any time before the commencement of the action.

SAME.— *Wagering Contract.*—*Proof of Inadmissible Unless Specially Pleaded.*— *Innocent Purchaser.*—*Burden of Proof.*—Where the defence to an action upon a promissory note was based upon alleged fraudulent representations by the payee, evidence would not be admissible of the illegality merely of the transaction as a wagering contract. The defence of illegality of the consideration of a note is one that must be specially pleaded, and in the pleading all the facts should be stated fully and clearly which enter into and constitute the consideration, and render it invalid. Where such a defence is pleaded, in an action by the endorser against the maker, the burden of proof is upon the plaintiff to show that he became the holder of the note before its maturity, in good faith, for value, and without notice.

From the Marshall Circuit Court.

*J. D. McLaren* and *E. C. Martindale,* for appellant.

*S. Parker* and *C. P. Drummond,* for appellee.

BLACK, J.—This was an action upon a promissory note for three hundred dollars, dated January 7th, 1886, payable at a bank in this State, made by the appellant to S. E. Jacox and by him endorsed before maturity to the appellee.

There was an answer in four paragraphs. In the first it was alleged, in substance, that the note was obtained from the appellant by fraudulent means and representations in the following manner: That the payee, said Jacox, in December, 1885, designedly, unlawfully, and with the intent to

defraud the public generally, and the appellant in particular, confederated and conspired with certain other persons, who called themselves The Indiana and Northwestern Seed Company, of which said Jacox claimed to be a member; that said Jacox falsely and fraudulently, and with the fraudulent design to obtain appellant's signature to the note in suit, represented to the appellant that said company had been incorporated under the laws of Indiana; that its purpose was the cultivation of a certain kind of oats called "Bohemian oats;" that said company was solvent and had on deposit with the secretary of State of Indiana a large sum of money, to wit, $50,000, and a bond for a like sum, as an indemnity for all those who would purchase its merchandise; that the company had the right to use the seal of the State of Indiana on its contracts and bonds; that the State of Indiana had guaranteed its obligations; that the company would obligate itself to take double the number of bushels of oats purchased from it by any person and sell the same for such person for ten dollars per bushel for said oats; that he further falsely and fraudulently represented that he had personally investigated the standing and financial ability of said company and of its officers and members, who were personally liable for all its obligations; that the company was financially sound and good for double the amount of its obligations, and its officers and members, some of whom he personally knew, were very wealthy men, and were good personally for all the obligations of the company; that the appellant, believing said Jacox to be a reputable and worthy citizen of Marshall county, and having no knowledge of his confederates or of said company, believed in and relied upon said representations and gave his order for thirty bushels of said Bohemian oats to said company in December, 1885, and said oats, with one of said bonds, were delivered by said Jacox to the appellant, and thereupon said Jacox, by means of said representations, which were false in every particular, unlawfully obtained from the appellant the note in suit, and

Bowser v. Spiesshofer.

upon no other consideration; that the appellee, before and at the time of his alleged purchase of the note, knew that it had been obtained from the appellant by said Jacox by means of the aforesaid false and fraudulent representations, and without any valuable consideration.

The second paragraph alleged that the note was not sold and assigned to the appellee for a valuable consideration before its maturity, and that he was not a *bona fide* purchaser of the note.

The third paragraph alleged that the appellee was not then, or at the commencement of the suit, a *bona fide* owner and holder of the note, and that he was not the real party in interest in the suit.

The fourth paragraph was a general denial.

The appellee replied by general denial.

No question was made as to the sufficiency of any of the pleadings.

A jury returned a general verdict for the appellee and special findings in answer to interrogatories.

The appellant's motion for a new trial was overruled, and this ruling alone is assigned as error.

Objections are urged to two of the instructions, the seventh and eighth, given by the court, and it is contended that the court erred in refusing to give instructions numbered one and two, requested by the appellant.

The court in one of its instructions told the jury that if fraud in the inception of the note was shown, the burden would be upon the appellee to show himself to be an innocent holder, that he was one who purchased the note in the usual course of business, before due, for a valuable consideration, and without notice of the fraud.

In its seventh instruction the court treated the first paragraph of answer as stating a good defence, based upon fraudulent representations.

In the portion of this instruction to which objection is made in argument the court, in effect, instructed that in de-

termining whether or not the appellant was induced to sign the note by the fraudulent representations of Jacox, the jury might take into consideration the wording and character of the bond delivered to the appellant at the time the note was executed, and that if the main inducement that entered the appellant's mind and caused him to sign the note was the belief that he would reap a benefit by becoming a party to a transaction of the questionable and dishonest character disclosed by the bond, the jury should find against the appellant upon the first paragraph of his answer.

The eighth instruction was to the effect that if the jury should find from the evidence that the main and controlling inducement which caused the appellant to sign the note was the belief on his part that by becoming a party to the speculative business and contract mentioned in the bond introduced in evidence he would reap a benefit by becoming a party to a transaction of the questionable and dishonest character disclosed by the bond, and that the appellee was the real owner of the note at the commencement of the action, then the jury need not inquire as to whether he purchased it before or after it came due; that if he bought and paid for it at any time before the commencement of the action he should recover.

In refusing to give the instructions requested by the appellant the court, in effect, held that the appellant could not support the defence based on fraudulent representations by evidence of the illegality merely of the transaction as a wagering contract.

The bond referred to in these instructions, by which the company agreed to sell oats for the appellant, contained the following provision:

"It is agreed and understood by and between the party named in this bond and said company that the transaction covered by this obligation is of a speculative character, and is not based upon the real value of the grain."

The appellant testified that he understood it to be a spec-

ulative business; that the price which he, by the note, promised to pay was not the real value of the oats bought; that the oats sold at one dollar per bushel, and that at the time he received the oats he expected to raise and sell to the company sixty bushels of the oats and to receive six hundred dollars for the same.

The contract entered into by the appellant was contrary to public policy. He might defend the action on the note upon the ground of the illegality of the transaction. Such a defence pleaded and proved would defeat an action on the note by the payee, and in an action by the endorsee against the maker such a defence pleaded and proved would cast upon the plaintiff the burden of showing that he became the holder of the note before its maturity, in good faith, for value and without notice. *Schmueckle* v. *Waters*, 125 Ind. 265; *Stescher* v. *Merea*, 118 Ind. 586.

The defence of illegality of the consideration of a note is one that must be specially pleaded. *Casad* v. *Holdridge*, 50 Ind. 529.

Where the maker of a note desires in an action thereon to rely for defence upon the illegality of the consideration, he should plead it, and in his pleading he should state fully and clearly all the facts which enter into and constitute the consideration and render it invalid. *Fisher* v. *Fisher*, 113 Ind. 474; *Kain* v. *Rinker*, 1 Ind. App. 86.

The defence pleaded in the first paragraph of the appellant's answer was based upon alleged fraudulent representations of the payee of the note in suit.

Evidence which is admitted in support of a defence pleaded, but which is not sufficient to sustain such defence, will not defeat the action because it would be sufficient to sustain another special defence which is not pleaded.

The court did not err in saying to the jury that the transaction disclosed by the bond was a questionable and dishonest one. It did not state to the jury that the illegality of the

transaction was not a good defence, but it in effect excluded it as a defence because it was not pleaded.

If the appellant's main and controlling inducement to sign the note was thereby knowingly to become a party to a transaction which was manifestly immoral and contrary to public policy, he could hardly claim to have been deceived and defrauded by the representations of the other parties with whom he so joined that he would reap a large pecuniary reward from such joint dishonesty. A representation which may serve as a defence of fraud should be one on which the defendant could rely reasonably and honestly. One can not claim to have been defrauded because he has not reaped a valuable reward which he anticipated from his participation in an unlawful scheme.

The law sustains a defence of fraud for the sake of the person defrauded. It sustains a defence of illegality such as that involved in the transaction here in question, because it will not lend the aid of the courts to either party to the unlawful contract.

We think the court did not commit any error in connection with these instructions.

This disposes of the controlling questions in the case. There were a number of objections to rulings of the court in the exclusion and the admission of evidence. So far as these objections were properly raised and presented by the record, they are unimportant in view of what we have already said in relation to the instructions. It would serve no useful purpose to extend this opinion by particular mention of these numerous rulings. We have carefully examined them, and we find no available error.

The judgment is affirmed.

Filed April 12, 1892.